UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KYRIA GRAVES,
Plaintiff,

Case No. 1:12-cv-0331
Barrett, J.
Litkovitz, M.J.

vs.

CITY OF NORTH COLLEGE HILL, et al.,
Defendants.

**ORDER AND REPORT
AND RECOMMENDATION**

This matter is before the Court on defendants' motion for summary judgment (Doc. 15), plaintiff's response in opposition to defendants' motion for summary judgment (Doc. 23), and defendants' motion to strike plaintiff's opposing memorandum (Doc. 24).

**I. Background**

Plaintiff Kyria Graves filed the pro se complaint in this matter on May 3, 2012, against defendants City of North College Hill (the "City") and City employees Police Chief Gary Foust, Sergeant John Ferguson, and Administrator Mark Fitzgerald. (Doc. 3). Plaintiff, an African-American who was formerly employed by the City as a police officer, alleges that defendants discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e, *et seq*. Plaintiff seeks reinstatement to his position, back pay, and attorney fees.

**II. Defendants' motion for summary judgment**

Defendants filed their motion for summary judgment on March 14, 2013. (Doc. 15). In support of the motion, defendants have filed the affidavit of Police Chief Foust (*Id.*, Exh. B); the affidavit of Sergeant Ferguson (*Id.*, Exh. C); and this Court's Order granting the City's "Motion

for Order Deeming Defendant's Request for Admissions Propounded to Plaintiff . . . Admitted" (*Id.*, Exh. E[1]).

Defendants contend they are entitled to summary judgment as a matter of law on any discrimination claim brought by plaintiff under Title VII. Defendants concede for summary judgment purposes that plaintiff is likely able to establish the first three elements of a prima facie case of discrimination under the tripartite framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). (Doc. 15 at 11). However, they argue plaintiff cannot show that he was replaced by an individual outside the protected class or that he was treated differently than similarly-situated, non-protected employees, so as to satisfy the fourth element of his prima facie case. (*Id.*). Defendants further argue that even assuming plaintiff were able to establish a prima facie case of discrimination, he cannot establish that defendants' legitimate, non-discriminatory reason for terminating him - *i.e.*, that he lied to his superiors during an internal investigation - was a pretext for unlawful discrimination. (*Id.* at 12-13).

Plaintiff contends that defendants are not entitled to summary judgment in their favor. (Doc. 23). Plaintiff asserts that certain material facts are in dispute and that he can establish all four elements of a prima facie case of discrimination. Plaintiff also makes allegations that

---

[1] Plaintiff failed to answer the Request for Admissions, and they were therefore deemed admitted. (Doc. 14). The undersigned has reviewed the Request for Admissions in connection with defendants' motion for summary judgment and has determined they go well beyond the intended purpose of Fed. R. Civ. P. 36 by targeting the ultimate legal issue in this case rather than matters that are not actually in controversy. *See U.S. v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (Fed. R. Civ. P. 36 "is essentially intended to facilitate proof at trials by obviating the need to adduce testimony or documents as to matters that are really not in controversy," and should not be used to "target[] the ultimate legal issue in the case."). Accordingly, the undersigned has not relied on the Request for Admissions in issuing this Report and Recommendation.

appear to question whether the articulated reason for his termination was sufficient to motivate the discharge and that challenge the factual basis for the termination decision.

In reply, defendants move to strike plaintiff's opposing memorandum on the grounds it was not timely filed and it is not supported by any evidence. (Doc. 24). The reply also addresses the merits of plaintiff's response. First, defendants assert that while plaintiff mentions "retaliation" for the first time in the opposing memorandum, he is barred from pursuing a claim for retaliation in this lawsuit because neither the complaint nor the September 10, 2011 Equal Employment Opportunity Commission (EEOC) charge he filed references "retaliation." (*Id.* at 4-5, citing Exh. A; *Talbot v. Cuyahoga County Bd. of Mental Retardation and Developmental Disabilities*, No. 1:07cv2862, 2009 WL 312941, at **4-5 (N.D. Ohio Feb. 6, 2009) (court does not have subject matter jurisdiction over Title VII claim unless the claimant explicitly asserts the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge). Second, defendants argue that plaintiff has not proffered any evidence of race discrimination but instead he has made only conclusory allegations that he will offer proof to establish his claim. They assert that plaintiff has introduced no evidence to show that he was replaced by an individual outside the protected class or that he was treated differently than a similarly-situated nonprotected employee. Moreover, defendants assert that plaintiff has not addressed or refuted the legitimate, nondiscriminatory reason they have articulated for his termination. Finally, defendants allege that the requests for admissions that have been deemed admitted further preclude plaintiff from establishing his race discrimination claim.

**III. Motion to strike response (Doc. 24).**

The Court will deny defendants' motion to strike plaintiff's memorandum in opposition to the motion for summary judgment. (Doc. 24). Plaintiff filed his opposing memorandum

3

within the time granted by the Court in its Order issued on May 6, 2013. (Doc. 21). Accordingly, there is no basis for striking the response as untimely. In addition, defendants have not cited any authority for striking a memorandum on the ground it is not supported by any evidence. Nor does the Court find any justification for declining to consider plaintiff's opposing memorandum on this ground. The Court cannot determine whether the opposing memorandum is without evidentiary support or whether plaintiff has established the presence of a genuine issue of material fact until the Court has reviewed the memorandum and all of the evidence of record. Accordingly, it is appropriate to consider the merits of plaintiff's response to the summary judgment motion, particularly given that plaintiff is proceeding pro se. The motion to strike is therefore DENIED.

### IV. Summary judgment standard

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. *See also Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1982). The movant bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant may carry its burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case by "pointing out to the court" that the non-moving party lacks evidence to

4

support an essential element of its case. *See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.*, 12 F.3d 1382, 1389 (6th Cir. 1993).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89). Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." *Guarino*, 980 F.2d at 405 (citing *Inter-Royal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal pleadings drafted by lawyers).

### IV. Undisputed facts

The City of North College Hill is a political subdivision located in Hamilton County, Ohio. (Foust Aff., ¶ 3). It has a small police department comprised of patrol officers and several sergeants, all of whom are supervised by Police Chief Foust. (*Id.*). The police department relies

5

on the professional and responsible conduct of both full-time and part-time police officers to provide a safe and harmonious community in the City. (*Id.*). The police department accomplishes this goal by employing honest and dedicated officers who abide by the values of trust-based policing and whose work upholds the department's reputation so that it is beyond suspicion. (*Id.*).

The City hired plaintiff as a part-time probationary police officer on September 7, 2010. (*Id.*, ¶ 5). Plaintiff remained a probationary employee during the entire term of his employment with the City pursuant to a contractual agreement between North College Hill and the Fraternal Order of Police (F.O.P.) ("the Agreement"). (Foust Aff., ¶ 4, Exh. A). Section 7.1 of the Agreement states, in pertinent part: "All newly hired employees . . . shall serve a probationary period during any required field training or re-training program and for an additional twelve (12) months following the completion of the training." (*Id.*). Section 7.2 provides that: "Upon successful completion of the probationary period, the employee shall be granted non-probationary status." (*Id.*). Section 7.3 states that a newly hired, probationary employee whose service has been determined to be unsatisfactory may have their probationary period extended or be dismissed, and probationary decisions are not grievable. (*Id.*).

On May 18, 2011, plaintiff testified in Hamilton County Municipal Court in the misdemeanor criminal trial of his sister, Keshia Graves. (Ferguson Aff., Exh. A). Plaintiff testified that he was a police officer with the City of North College Hill. (*Id.*, p. 2). He testified he was outside the Golf Manor Mayor's Court on March 28, 2011, and he was in uniform at the time. (*Id.*, pp. 2-3). Plaintiff testified he was located across the street in a black Toyota Camry with the window down when he observed his sister leave the Mayor's Court. (*Id.*, p. 3). Plaintiff testified that although he could tell his sister was upset, he did not hear any shouting or yelling.

(*Id.*). He further testified that he observed an officer apprehending her in an aggressive manner on the front of a vehicle as she proceeded towards her car. (*Id.*, p. 4). He testified that afterwards he asked the arresting officer and another officer who came outside what was happening. (*Id.*, pp. 4-5). On cross-examination, plaintiff confirmed that he was sitting in his car across the street from the police department and he observed his sister being arrested; he observed the officers pin his sister up against the car and she was not resisting; and he told one of the officers that he was on his way to work, which is why he was in his uniform. (*Id.*, pp. 5-6).

In June of 2011, allegations that plaintiff had lied on the witness stand in the criminal case involving his sister came to Foust's attention. (Foust Aff., ¶ 7). As a result, Chief Foust assigned Sergeant Ferguson to conduct an internal investigation. (*Id.*, ¶ 8). Plaintiff was notified of the investigation. (*Id.*). Sergeant Ferguson obtained the relevant transcript from the May 18, 2011 criminal trial, and he then conducted interviews of Golf Manor Police Officers James Gilbert and Ryan Rump, who were involved in the arrest, trial and conviction of Keshia Graves. (*Id.*, ¶¶ 7-8; Doc. 15, Exh. A[2]).

On July 13, 2011, Sergeant Ferguson conducted a 50-minute videotaped interview with plaintiff concerning the allegations that had been made. (Foust Aff., ¶ 9; Ferguson Aff., ¶ 6; Doc. 15, Exh. A). At the beginning of the interview, plaintiff signed an "Internal Investigation-Garrity Warning" and an "Internal Investigation-Insubordination Warning." (Ferguson Aff., ¶ 7; Exhs. B, C). Plaintiff was advised of the nature of the charges against him and was told by Sergeant Ferguson to answer fully, truthfully, and to the best of his knowledge and/or ability. (Ferguson Aff., ¶ 8; Exh. A, 7/13/11 interview- 5:39 to 8:00). Plaintiff was advised that his intentional failure to be truthful could result in separate charges being brought against him.

---

[2] Exhibit A is a DVD which includes video recordings of the interviews with Officers Gilbert and Rump as well as interviews defendants had with plaintiff.

(Ferguson Aff., ¶ 8; Exh. A, 7/13/11 interview- 9:20-10:12). Plaintiff was advised that the internal investigation could lead to discipline, including termination as a result of the investigation. (Ferguson Aff., ¶ 8; Exh. A, 7/13/11 interview- 10:45-10:55). Plaintiff was also advised that he could be represented by either legal counsel or an F.O.P. representative pursuant to the Agreement. (Ferguson Aff., ¶ 8). Plaintiff elected to be represented by F.O.P. representative Mark Scranton at the interview. (Id.).

Plaintiff testified at the interview that he was a part-time officer; he was familiar with the policies of the City's police department; and he believed an appropriate punishment for an officer who lies during the scope of his employment should be termination because an officer "who lies shouldn't be in the profession." (Ferguson Aff., ¶ 9; Exh. A, 7/13/11 interview- 11:15-11:45, 12:42). Plaintiff answered questions about his testimony at the May 18, 2011 criminal trial of his sister and the underlying incident that had occurred at the Golf Manor Mayor's Court on March 28, 2011. (Ferguson Aff., ¶ 10; Exh. A).

Based on the answers plaintiff had provided, Sergeant Ferguson performed a follow-up investigation into alleged instances of misconduct by plaintiff and determined based on his findings that there was substantial proof to sustain nine out of the ten alleged "violations of misconduct." (Ferguson Aff., ¶ 10). He submitted his Internal Investigation Report and Follow-Up to Chief Foust. (Id., Exh. D). Sergeant Ferguson reported that plaintiff had made a number of deliberate untruthful statements during his initial interview on July 13, 2011, including the following:

> 1. Plaintiff testified that he was in his Lincoln Heights Police Department uniform on March 28, 2011 (the date of his sister's arrest) because he was working an off-duty detail for Model Construction on Medosch Street in Lincoln Heights. (Exh. A, 7/13/11 interview- 26:22-26:45, 27:50-28:15).

8

Sergeant Ferguson reported he had contacted Renada Shepard, Model Construction's project coordinator on the building site at Medosch Street in Lincoln Heights, who advised him there was no off-duty detail for that site on March 28, 2011, or during the entire month of March 2011. Shepard provided a letter stating there was no security for that site from December of 2010 until the beginning of April 2011.

2. Plaintiff testified that Sergeant Conroy Chance, a Lincoln Heights police officer who was working for Lincoln Heights on the night of March 28, 2011, saw and observed plaintiff at the Medosch off-duty detail five to six times that night. (Exh. A, 7/13/11 interview- 36:00-36:42).

Sergeant Ferguson reported he had contacted Sergeant Chance, who did not recall the incident. Sergeant Ferguson then obtained records from the Hamilton County Communications Center for March 28, 2011, which established that neither plaintiff nor Sergeant Chance was working a detail or was on duty for the Lincoln Heights Police Department during the day or night of March 28, 2011.

3. Plaintiff testified that he worked in the past on off-duty details for Lincoln Heights, including the March 28, 2011 off-duty detail on Medosch Street. Plaintiff testified that Lincoln Heights had yet to pay him for any of those off-duty details since 2008 and that plaintiff had spoken with and had a meeting with the Lincoln Heights Village Manager about not being paid. (Exh. A, 7/13/11 interview- 33:44-33:48).

Sergeant Ferguson reported he had contacted Lincoln Heights Village Manager Stephanie Dumas, who stated she had never spoken to or met with plaintiff since becoming Village Manager.

(*Id.*, ¶¶ 10, 11, 12; Exh. D).

After reviewing the July 13, 2011 interview, Police Chief Foust suspected that plaintiff had lied during the interview. (Foust Aff., ¶ 10). He therefore placed in abeyance the initial pre-disciplinary proceedings involving the nine of ten charges that arose out of plaintiff's testimony at the criminal trial. (*Id.*). On September 22, 2011, Foust filed a new charge of "dishonesty or untruthfulness," which constituted a violation of the City's policy and procedure manual, 41:10. (*Id.*; Exh. B). The specification for the new charge was giving "untruthful or misleading statements or partial truths during a legal proceeding, internal investigation, or administrative proceeding - NCHPD Internal Investigation conducted on July 13th, 2011[.]" (*Id.*).

A pre-discipline hearing with respect to the new charge occurred on October 14, 2011. (Foust Aff., ¶ 11). Plaintiff was represented at the hearing by legal counsel and by F.O.P. representative Scranton. At the hearing, plaintiff was confronted with evidence which contradicted his allegations that he had been working an off-duty detail on March 28, 2011; that Sergeant Chance had been working and had seen plaintiff in his uniform several times that day; and that plaintiff had spoken to the Village Manager of Lincoln Heights about delinquent pay issues. (Foust Aff., ¶¶ 11, 12; Exh. A, 10/14/11 interview- 18:00-20:45). After considering these matters, plaintiff admitted that he had been "dishonest in [his] internal interview," but he reaffirmed that he was in uniform on the day of his sister's arrest and he insisted he had not been "dishonest under oath." (Foust Aff., ¶ 12; Exh. A, 10/14/11 interview- 22:39-23:01).

As a result of plaintiff's admission that he had been untruthful during the investigation, together with other evidence discovered by Sergeant Ferguson that supported the initial allegations made against plaintiff, Chief Foust issued a recommendation to City Administrator Fitzgerald on October 17, 2011, that plaintiff be terminated as a probationary employee. (Foust Aff., ¶ 13). Chief Foust's recommendation took into consideration the egregious nature of plaintiff's conduct, which was determined to compromise the ability of plaintiff to be an effective police officer, and Foust's classification of plaintiff's conduct as a direct betrayal of trust and confidence. (Foust Aff., ¶ 14; Exh. C). Upon reviewing the recommendation of Chief Foust, the pre-disciplinary hearing, and the evidence submitted by Chief Foust, City Administrator Fitzgerald issued a determination on behalf of the City on October 21, 2011, officially terminating plaintiff as a part-time probationary police officer. (Foust Aff., ¶ 15; Exh. D).

While the internal investigation was ongoing, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) dated August 31, 2011. (Doc. 3). Plaintiff checked the box indicating that he was alleging race discrimination. Plaintiff alleged in the charge that he was the only black officer with the North College Hill police force, and that he was suspended on or about June 26, 2011, after he testified about an incident he witnessed while off duty concerning his sister. Plaintiff alleged that the City conducted an investigation and stated that plaintiff had lied under oath in court, which plaintiff denied. Plaintiff asserted that since his suspension, he had been subjected to a pre-discipline hearing and threatened with discharge.

### V. Law of discrimination

Plaintiff has not offered direct evidence of discrimination but instead seeks to establish his case by circumstantial evidence. A Title VII case premised on circumstantial evidence is analyzed under the burden-shifting framework set forth in *McDonnell-Douglas*, 411 U.S. 792. Plaintiff must first establish a prima facie case of discrimination by showing that: (1) he was in a protected class; (2) he suffered an adverse employment action; (3) he was qualified for his position; and (4) he was replaced by someone outside the protected class or was treated differently than similarly-situated non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Once plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer some legitimate, nondiscriminatory reason for its action. *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (citing *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009)). The burden then shifts back to the plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision but was a pretext for unlawful discrimination. *Id.* (citing *White v. Baxter Healthcare Corp.*, 533

F.3d 381, 391-92 (6th Cir. 2008)). Although the burden of production shifts, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff is at all times on the plaintiff. *Bryson v. Regis Corp.,* 498 F.3d 561, 570 (6th Cir. 2007).

To establish pretext, the plaintiff is required to show by a preponderance of the evidence that: (1) the proffered reason had no basis in fact, (2) the reason did not actually motivate the plaintiff's discharge, or (3) the reason was insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), overruled on other grounds by *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167 (2009).

The "honest belief rule" holds that where a plaintiff seeks to demonstrate pretext by showing the employer's proffered reasons have no basis in fact, an inference of pretext is not warranted if the employer can demonstrate an "honest belief" in its proffered reason. *Seeger v. Cincinnati Bell Telephone Co.,* 681 F.3d 274, 285 (6th Cir. 2012). Under the rule, an employer's proffered reason is considered to be "honestly held where the employer can establish it reasonably reli[ed] on particularized facts that were before it at the time the decision was made." *Id.* (citing *Joostberns v. United Parcel Servs., Inc.,* 166 F. App'x 783, 791 (6th Cir. 2006)). The burden is on the plaintiff to demonstrate that the employer's belief was not honestly held. *Id.* (citing *Joostberns,* 166 F. App'x at 791). The Sixth Circuit in *Seeger* explained the "ground rules" for application of the honest belief rule as follows:

> A plaintiff is required to show "more than a dispute over the facts upon which the discharge was based." *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001). We have not required that the employer's decision-making process under scrutiny "be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir. 1998). Furthermore, "the falsity of [a] [d]efendant's reason for terminating [a] plaintiff cannot establish pretext as a matter of law" under the honest belief rule. *Joostberns,* 166 F. App'x at 794 (footnote omitted). As long as the employer held an honest belief in its proffered reason, "the employee

12

cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith*, 155 F.3d at 806; *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

*Seeger*, 681 F.3d at 285-86.

### VI. Defendants are entitled to summary judgment as a matter of law.

Plaintiff alleges that Chief Foust's order to conduct an internal investigation in June 2011 was racially motivated and that the four elements of a prima case are met. Plaintiff's argument is difficult to follow. However, he appears to allege that after testifying against the two white arresting officers in his sister's criminal case (Officers Gilbert and Rump), he suffered the following adverse "retaliatory" actions: (1) he received unwarranted negative feedback from his superior officers, and (2) Sergeant Ferguson filed a complaint against him, which caused plaintiff to be placed on administrative leave by Lincoln Heights.[3] Plaintiff further alleges that he was replaced by a person outside of the protected class, and Chief Foust failed to initiate internal investigations when he received written complaints regarding the criminal on and off duty dealings of white officers and city employees. Plaintiff also challenges the reason proffered by defendants for his discharge.

Assuming for summary judgment purposes that plaintiff can satisfy the first three elements of a prima facie case of race discrimination, plaintiff has failed to offer evidence which, if accepted as true, satisfies the fourth element of his prima facie case. Plaintiff has not offered any evidence to show that he was replaced by an individual outside the protected class, nor has he even identified the individual who allegedly replaced him. Plaintiff has also failed to submit any evidence that shows defendants failed to take action against a white police officer who was

---

[3] Although plaintiff describes these actions as "retaliatory" in his opposing memorandum, it does not appear he is alleging a claim for retaliation under Title VII. Even if plaintiff sought to bring such a claim, he would be barred from pursuing a claim for retaliation due to his failure to assert a retaliation claim in his EEOC charge and in the complaint filed in this lawsuit. *See Williams v. Northwest Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) (the exhaustion of administrative remedies is a condition precedent to a Title VII action).

similarly-situated to plaintiff and who committed an infraction of comparable seriousness. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (stating that the "ultimate . . . question" is whether there is "an allegation that other employees involved in acts . . . of comparable seriousness . . . were nevertheless retained") (internal quotation marks omitted). Plaintiff makes only general, conclusory allegations that he has proof other employees were treated differently. Plaintiff cannot rest on the mere allegations of his opposing memorandum but must "present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp.*, 822 F.2d at 1435. Because plaintiff has not produced any evidence to show he can establish the fourth element of his prima facie case, defendants are entitled to summary judgment on plaintiff's claim of race discrimination as a matter of law.

Assuming plaintiff were able to establish a prima facie case of race discrimination, defendants have articulated a legitimate, nondiscriminatory reason for plaintiff's termination. Defendants assert that plaintiff was terminated because he lied to his superiors during an internal investigation. (Doc. 15 at 12-13, citing Exh. A). Defendants concluded that plaintiff had been blatantly untruthful in a number of respects during the July 13, 2011 interview.

In response, plaintiff indicates that the reason stated by defendants for his termination has no basis in fact. Plaintiff asserts he "has proof that he was off duty as indicated in the pre-disciplinary hearing CD dated October 14, 2011." (Doc. 23 at 3). However, plaintiff has neither identified nor proffered such proof. His conclusory allegation that such proof exists is insufficient to carry his burden on summary judgment to show that a genuine issue of material fact exists. *See Sixty Street Ivy*, 822 F.2d at 1435.

Moreover, whether plaintiff was actually "off duty" on March 28, 2011, is not determinative of whether the reason proffered by defendants for plaintiff's discharge was a pretext for race discrimination. The question is whether defendants "made a reasonably informed and considered decision" before terminating plaintiff's probationary employment. *See Seeger*, 681 F.3d at 285. Defendants have offered evidence that shows they made a well-informed and thoroughly considered decision before discharging plaintiff. The documentation defendants have introduced demonstrates that defendants conducted a thorough investigation into whether plaintiff had given untruthful testimony at his sister's criminal trial and whether he had been dishonest during the City's internal investigation. Defendants' evidence shows that they reasonably relied on particularized facts uncovered during their investigation to support a determination that plaintiff had been dishonest or untruthful. Defendants therefore had an honest belief in their proffered reason for plaintiff's termination, *i.e.*, that plaintiff had committed a violation of the "Dishonesty or Untruthfulness" provision of the City's policy and procedures manual. (*See* Foust Aff., Exh. C).

Plaintiff has not produced evidence to show that defendants did not reasonably rely on particularized facts to conclude he had been dishonest or untruthful. Plaintiff has made only a bare assertion that he can prove he did not lie concerning whether he was off duty. Plaintiff's conclusory allegation as to what he intends to show is insufficient to call into question defendants' honest belief that plaintiff had been dishonest, particularly given that plaintiff admitted he had been "dishonest in [his] internal interview." (Exh. A., 10/14/11 interview-22:39).

Accordingly, viewing the evidence in the light most favorable to plaintiff, defendants made a "reasonably informed and considered decision" before terminating his probationary

employment. *See Smith*, 155 F.3d at 808. Plaintiff has not produced evidence to refute defendants' honest belief in the reason for his termination.

In addition to challenging the factual basis for his termination, plaintiff suggests that the reason offered by defendants was insufficient to motivate his termination. Plaintiff suggests that §§ 7.1 and 7.3 of the Agreement did not apply to his situation and therefore did not provide a legitimate basis for his termination. Plaintiff alleges that he was "off duty" and was not participating in any training, and he had received "above satisfactory" and "excellent" progress and observation reports after he was hired, such that the "unsatisfactory" performance rating required for termination under § 7.3 of the Agreement was not met. (Doc. 23 at 1-3). However, the undisputed evidence establishes that the basis for plaintiff's termination was his misconduct during the internal investigation. (Doc. 23 at 3). Thus, the fact that plaintiff's performance ratings were satisfactory prior to the misconduct that led to his termination has no bearing on the legitimacy of the proffered reason for his discharge.

Plaintiff has not produced any evidence that creates a genuine issue of material fact as to whether defendants discriminated against him based on his race. Plaintiff has failed to produce evidence which, if accepted as true, establishes a prima facie case of race discrimination. Moreover, plaintiff has failed to come forward with evidence to show that the legitimate, non-discriminatory reason articulated by defendants for his termination is pretextual. Summary judgment should be granted in favor of defendants on plaintiff's race discrimination claim.

**IT IS THEREFORE ORDERED THAT:**

(1) Defendants' motion to strike plaintiff's response to the motion for summary judgment (Doc. 24) is DENIED.

**IT IS THEREFORE RECOMMENDED THAT:**

(1) Defendants' motion for summary judgment (Doc. 15) be GRANTED.

(2) The Court certify pursuant to 28 U.S.C. § 1915(a) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore deny plaintiff leave to appeal *in forma pauperis*. Plaintiff remains free to apply to proceed *in forma pauperis* in the Court of Appeals. *See Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999), overruling in part *Floyd v. United States Postal Serv.*, 105 F.3d 274, 277 (6th Cir. 1997).

Date: 6/28/13

Karen L. Litkovitz, Magistrate Judge
United States District Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KYRIA GRAVES,
    Plaintiff,

Case No. 1:12-cv-0331
Barrett, J.
Litkovitz, M.J.

vs.

CITY OF NORTH COLLEGE HILL, et al.,
    Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Kyria Graves
3323 Braewood Drive
Evendale, OH 45241

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☒ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)

7002 3150 0000 8389 9746

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540